UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
FITZGERALD SCOTT,                       )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No. 12-1696 (ABJ)
                                        )
UNITED STATES OF AMERICA,               )
                                        )
                    Defendant.          )
_____)

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant United States of America respectfully

moves to dismiss this case for failure to state a claim upon which relief can be granted.  In the

alternative, defendant moves for summary judgment under Fed. R. Civ. P. 56 because the

indisputable facts make clear that defendant is entitled to judgment as a matter of law.  The

grounds for these motions are set forth in the accompanying Memorandum of Points and

Authorities and Statement of Material Facts Not in Genuine Dispute.

Dated:  February 27, 2013.

                            Respectfully submitted,

                            RONALD C. MACHEN JR., D.C. Bar No. 498610
                            United States Attorney

                            DANIEL F. VAN HORN, D.C. Bar No.  924092
                            Chief, Civil Division

   /s/  *Jane M. Lyons*
JANE M. LYONS, D.C. Bar No. 451737
Assistant United States Attorney
555 Fourth Street, N.W. – Room E4816
Washington, D.C.  20530
(202) 514-7161

Of Counsel:
SCOTT S. HARRIS
Counsel
Supreme Court of the United States
1 First Street, N.E.
Washington, D.C. 20543

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| | ) | |
| FITZGERALD SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-1696 (ABJ) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff Fitzgerald Scott filed this action under the Federal Tort Claims Act seeking

monetary damages in connection with his arrest on January 20, 2012, at the Supreme Court of

the United States.  Plaintiff was arrested after he refused to honor multiple requests to leave the

interior of the Court building because his jacket, which bore a political message, violated a

federal statute governing expressive activity at the Court.  Although the charges against plaintiff

were dropped quickly after arrest, Scott now seeks monetary compensation for false arrest and

imprisonment because, he claims, there were no legal grounds for the arrest.

The complaint should be dismissed.  For a tort claim of false arrest, plaintiff ultimately

must show both that there was no probable cause for the arrest and that the arresting officers did

not have a reasonable belief that there was probable cause.  But because plaintiff was asked

repeatedly to leave the Court building by a Supreme Court Police officer who had the authority

to issue that request to a person violating the ban on expressive activity inside the Supreme

Court, there was undoubtedly probable cause for plaintiff's arrest.  In the alternative, summary

judgment should be granted in favor of the United States because the undisputed facts make clear that the government is entitled to judgment as a matter of law.

## BACKGROUND

At one point while plaintiff was viewing exhibits inside the Supreme Court building on January 20, 2012, Deputy Chief Timothy Dolan of the Supreme Court Police approached plaintiff and informed him that he would not be permitted to wear his jacket, with the words "Occupy Everything" painted on it, in the building.  *See* Complaint, ¶¶ 6 and 8.  This was the same day as a large demonstration on the front plaza and steps of the Court organized by the "Occupy" movement that led to eleven other arrests.  *See* Attachment A, Declaration of Timothy Dolan ("Att. A"), at ¶ 5.  Plaintiff removed his coat when he passed through security upon entering the building, but later put it back on.  *See* Complaint, ¶ 7.

At one point while plaintiff was viewing exhibits in the Supreme Court building, the Deputy Chief of the Supreme Court Police approached plaintiff and informed him that he would not be permitted to wear his jacket in the building.  *See* Complaint, ¶ 13; Att. A, at ¶ 6.[1] According to plaintiff, he was informed that he would be permitted to wear his jacket on the public sidewalk outside the Supreme Court, but that he could not wear it inside the building.  *See* Complaint, ¶ 13.  Deputy Chief Dolan, who was in uniform at the time, warned plaintiff that his jacket was comparable to a sign or a demonstration, and that he would be placed under arrest if

---

[1]     The Complaint alleges that a United States Supreme Court police officer arrested plaintiff.  Complaint, ¶¶ 2, 18.  Later in the Complaint, however, plaintiff alleges that an officer who spoke with plaintiff was a member of the U.S. Capitol Police.  *See* Complaint, ¶ 11; *see also id.* ¶ 16.  In fact, the only law enforcement officers involved with or present for plaintiff's arrest were members of the Supreme Court Police, who have the legal authority to police the Supreme Court building and grounds and to make arrests for violations of federal or state law.  *See* Att. A, at ¶ 7; *see also* 40 U.S.C. § 6121(a).  For purposes of this motion, the affiliation of the law enforcement officer who spoke to or arrested Scott is of no moment because the United States is the only proper defendant in a case brought under the FTCA.  28 U.S.C. §§ 1346(b), 2679(a).

he did not either leave the building or take off the jacket.  *See* Complaint, ¶¶ 11-15.  Despite

multiple warnings, plaintiff refused to either leave the building or take off the jacket; as a result,

he was arrested and charged with unlawful entry under District of Columbia law.  *See*

Complaint, ¶¶ 18-19.  The charges against plaintiff were dropped, and he was released from

custody later on the day of the arrest.  *See* Att. A, at ¶ 6.

On April 25, 2012, plaintiff submitted an administrative tort claim to the Supreme Court,

seeking $1,000,000 in damages in connection with his arrest.  *See* Complaint, ¶ 22.  The

Supreme Court denied that tort claim in full on September 20, 2012.  *Id.*  On October 17, 2012,

plaintiff filed this civil action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80

("FTCA").  Plaintiff alleges that the United States is liable for false arrest and imprisonment

because there was no probable cause for his arrest.  *See* Complaint, ¶ 23.  According to plaintiff,

there was no probable cause because: (1) the police officer who directed plaintiff to leave the

building was not a lawful occupant or person in charge of the building; (2) plaintiff had lawful

authority to remain on the property; (3) plaintiff did not know that he was remaining on the

property against the will of the person lawfully in charge; (4) plaintiff did not refuse to leave the

building; (5) there was no "additional, specific factor" establishing plaintiff's lack of authority to

remain; and (6) plaintiff's speech was protected under the First Amendment.  *See* Complaint, ¶

25.  He seeks compensatory damages and the expunging of records of his arrest.  *See* Complaint,

Prayer for Relief.

## ARGUMENT

### I.    Standards of Review Under Rules 12(b)(6) and 56.

A motion to dismiss tests the legal sufficiency of the complaint. *See Browning v. Clinton*,

292 F.3d 235, 242 (D.C. Cir. 2002).  A motion to dismiss should be granted if the complaint fails

to "'state a claim to relief that is plausible on its face.'"  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555, 570 (2007) (dismissal is appropriate if the complaint fails to present "enough facts

to state a claim to relief that is plausible on its face. . . Factual allegations must be enough to

raise a right to relief above the speculative level,. . . on the assumption that all the allegations in

the complaint are true (even if doubtful in fact). . .") (citations omitted); *accord Ashcroft v. Iqbal*,

556 U.S. 662 (2009).  A "court need not accept inferences drawn by [the] plaintiff[] if such

inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns

Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A court also need not accept legal conclusions

couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. at 678.

In resolving a motion to dismiss, a court may consider "the facts alleged in the complaint,

documents attached as exhibits or incorporated by reference in the complaint, and matters about

which the Court may take judicial notice." *Gustave-Schmidt v. Cha*o, 226 F. Supp. 2d 191, 196

(D.D.C. 2002); *see E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.

1997).  The Court may also take judicial notice of the physical location and characteristics of the

interior of the Supreme Court.  See Fed. R. Evid. 201(f); *Oberwetter v. Hilliard*, 680 F. Supp.2d

152, 156-57 n.1 (D.D.C.. 2010), *aff'd*, 639 F.3d 545, 552 n.4 (D.C. Cir. 2011).

"Summary judgment is appropriate when the pleadings and the evidence demonstrate that

'there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.'" *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 154 (D.D.C. 2007) (*quoting

Fed. R. Civ. P. 56(c)).  The party moving for summary judgment bears the initial responsibility

of showing an absence of a genuine issue of material facts.  *Id.*  In deciding whether a genuine

issue of material facts exists, the court must "accept all evidence and make all inferences in the

non-movant's favor." *Id.*, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  "A

non-moving party, however, must establish more than the mere existence of a scintilla of evidence in support of its position." *Id.* (citations and internal quotation marks omitted). That is, "'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.*, *quoting Anderson,* 477 U.S. at 249-50.

## II.  The Complaint Fails to Allege A Cognizable Claim for False Arrest

### A.  The Federal Tort Claims Act

The Federal Tort Claims Act provides a limited waiver of sovereign immunity for certain tort actions "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."). Thus, the relevant question for the Court is whether the facts at issue here would give rise to a tort of false arrest or imprisonment under the law of the District of Columbia. *See*, *e.g.*, *Koroma v. United States*, 628 F.Supp. 949, 952 (D.D.C. 1986); *Lucas v. United States*, 443 F.Supp. 539, 543 (D.D.C. 1977).

Under District of Columbia law, the torts of false arrest and false imprisonment are indistinguishable. *See, e.g.*, *Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010); *see also Koroma*, 628 F.Supp. at 952. Where, as here, an arrest is made without a warrant, a law enforcement officer's actions are justified if the government shows "either that probable cause existed to arrest or that the arresting officer believed, reasonably and in good faith, that probable cause existed." *See Minch v. District of Columbia*, 952 A.2d 929, 937 (D.C. 2008), *Murphy v. District of Columbia*, 631 A.2d 34, 36 (D.C. 1993). The question of whether probable cause supports an arrest turns upon whether a reasonably prudent officer, confronting all of the

circumstances, would be warranted in believing that the defendant committed the offense.  *Davis v. United States*, 781 A.2d 729, 734 (D.C. 2001); *see also Liser v. Smith*, 254 F.Supp.2d 89, 95-96 (D.D.C. 2003) (relevant question in false arrest claim is whether officer had a reasonable belief that the defendant's conduct was unlawful); *Joyce v. United States*, 795 F.Supp. 1, 4 (D.D.C. 1992) (false arrest claim under FTCA must be dismissed where arresting officer had objectively reasonable belief that probable cause existed); *Koroma,* 628 F.Supp. at 952 (same).

Plaintiff in this case was arrested for unlawful entry.  The District of Columbia unlawful entry statute provides as follows, in relevant part:

> Any person who, without lawful authority, shall enter, or attempt to enter, any public building, or other property, or part of such building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof or his or her agent, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof or his or her agent, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than $1,000, imprisonment for not more than 6 months, or both.

D.C. Code § 22-3302(b).  Plaintiff's conduct was determined to be in violation of the portion of the statute that prohibits someone who, while at a public building, "without lawful authority to remain therein or thereon shall refuse to quit the same on the demand … of the person lawfully in charge thereof or his or her agent."  Att. A, at ¶ 6.

In order to ensure that the unlawful entry statute is consistent with the First Amendment, the D.C. Court of Appeals has required that, in addition to the requirements of the plain language of the statute, there also be "some additional specific factor establishing the party's lack of a legal right to remain."  *See, e.g.*, *Abney v. United States*, 616 A.2d 856, 859 (D.C. 1992) (Capitol Police Board order closing Capitol steps and adjacent areas qualified as additional specific factor); *O'Brien v. United States*, 444 A.2d 946, 948-49 (D.C. 1982) (posted regulation

prohibiting expressive activities within 15 feet of specific congested areas qualified as additional specific factor).

### B. There Was Probable Cause to Arrest Plaintiff, and the Arresting Officers' Belief to That Effect Was Reasonable.

Based on the allegations in the complaint, there can be no legitimate question that the arresting officers had probable cause to believe that plaintiff violated the unlawful entry statute and/or 40 U.S.C. § 6135. The officer who instructed plaintiff to either leave the building or take off his jacket was the Deputy Chief of the Supreme Court Police, who was certainly the agent of the person lawfully in charge of the building within the meaning of the unlawful entry statute. *See* Att. A, at ¶ 6. There is no dispute, as both the complaint and Mr. Dolan's declaration attest, that plaintiff received multiple instructions to either take off the jacket or leave the building, and no reasonable person in his position could have doubted the nature of those instructions. And the existence of section 6135, which prohibits the display of items designed to bring notice to an organization or movement, constitutes the type of additional specific factor needed to support a conviction under the unlawful entry statute. *See Abney*, 616 A.2d at 859. At a bare minimum, the arresting officer's belief that probable cause existed was certainly reasonable and in good faith. *See Minch*, 952 A.2d at 937. *See also Oberwetter*, 639 F.3d at 554 (police officer had probable cause to arrest individual for dancing, as expressive activity, within the interior of the Jefferson Memorial).

It also bears noting that, while plaintiff was initially charged with violating the unlawful entry statute, his conduct also violated the Display Clause of section 6135, and he could just as easily have been charged with an independent violation of that statute as well. *See United States v. Vinton*, 594 F.3d 14 (D.C. Cir. 2010) (an officer's mistaken belief that he has probable cause

to arrest for one offense is irrelevant if he has probable cause to arrest for another).[2]  The jacket that plaintiff was wearing at the time was emblazoned with the words "Occupy Everything" at the same time that there was a significant demonstration by the Occupy movement on the Supreme Court plaza, and thus was certainly a "device designed or adapted to bring into public notice a party, organization, or movement."  Indeed, the District of Columbia courts have on at least two occasions upheld convictions under the statute based upon the display of clothing that, like this jacket, included writing or was otherwise intended to convey a message.  *See Kinane v. United States*, 12 A.3d 23, 26 (D.C. 2011) (upholding convictions of 34 individuals, some of whom wore orange t-shirts with the words "Shut Down Guantanamo" inside the Great Hall of the Supreme Court); *Potts v. United States*, 919 A.2d 1127, 1130-31 (D.C. 2007) (display of orange jump suits and black hoods was properly found to violate Display Clause).  Thus, there was also probable cause to believe that plaintiff violated section 6135.

The conclusory allegations in the Complaint do not defeat probable cause because they lack factual support.  As noted above, plaintiff asserts that the law enforcement officer who directed him to leave the building "was not a lawful occupant or person lawfully in charge of the property."  *See* Complaint, ¶ 24.  As an initial matter, the relevant legal question under the unlawful entry statute is whether Deputy Chief Dolan was "the person lawfully in charge thereof or his or her agent."  *See* D.C. Code § 22-3302(b).  Plaintiff's argument on this point appears to

---

[2] The question is whether officers in the particular circumstances, conditioned by their observation and information, and guided by their experience, reasonably could have believed that a crime had been committed.  *Mann v. United States*, 283 A.2d 28, 30 (D.C. 1971).  That assessment turns on the totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 231-232 (1983); *see also Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)(Fourth Amendment does not forbid warrantless arrests for minor crimes such as seatbelt violations committed in officer's presence).  The D.C. Code places limits on the ability of the police to make warrantless arrests.  D.C. Code § 23-581 (authorizing warrantless arrest for any felony, misdemeanors committed in presence of police, and certain listed misdemeanors not committed in presence of police, if immediate apprehension is necessary to prevent injury or loss of evidence).

be based primarily, if not entirely, upon his mistaken belief that Deputy Chief Dolan was a member of the U.S. Capitol Police.  But in any event, Mr. Dolan explains in his declaration that the Marshal of the Supreme Court and the Supreme Court Police are given the statutory authority to police the Court's building and grounds.  *See* 40 U.S.C. §§ 6113 and 6121-22.  Under Supreme Court policies, individual officers such as Deputy Chief Dolan and Officer Freeman are authorized to order those deemed to be in violation of section 6135 to leave Court property if they do not cease their illegal activity.  *See* Att. A, at ¶ 4.  Thus, there is plainly no merit to plaintiff's suggestion that these officers did not have the authority to order him to leave. *Twombly*, 550 U.S. at 555, 570.

Plaintiff is similarly mistaken when he argues that he had "lawful authority to remain on the property" and that "there was no 'additional, specific factor' establishing [his] lack of authority to remain."  *See* Complaint, ¶ 24.  As noted above, section 6135 is the "additional, specific factor" that gave the Supreme Court Police the authority to invoke the unlawful entry statute.  Because there was probable cause to believe that plaintiff violated that statute, there was authority to order him to leave.

Plaintiff next alleges that there was no probable cause for his arrest because he "did not know that he was remaining on the property against the will of person lawfully in charge of the premises."  Complaint, ¶ 24.  This assertion is contradicted not only by Mr. Dolan's declaration, see Att. A, at ¶ 6, but also by plaintiff's own complaint in this case.  *See* Complaint, ¶ 15 ("The officer said, 'I'm the authority here,' and told Mr. Scott that he needed to take off the jacket or leave, and that if he did not leave, he would be placed under arrest for unlawful entry.").  That plaintiff may have doubted the accuracy of Deputy Chief Dolan's assertion is simply irrelevant to application of the unlawful entry statute.  *See also Cheek v. United States*, 498 U.S. 192, 199

- 9 -

(1991) (ignorance of the law is not a defense to a criminal prosecution).  And because Deputy

Chief Dolan and Officer Freeman obviously knew that they had this authority, it is irrelevant to

the question of whether these officers had probable cause to support an arrest under the facts

alleged in the complaint and in Mr. Dolan's declaration.

The basis for plaintiff's assertion that he "did not refuse to leave" is unclear, particularly

because he acknowledges that he was given multiple warnings to either remove his jacket or

leave the building.  *See* Complaint, ¶¶ 9, 13, 15 and 17.  Plaintiff may be suggesting that he did

not understand the nature of the instructions, and that this somehow makes the arrest improper.

*See* Complaint, ¶ 17  ("The officer asked Mr. Scott if he understood and Mr. Scott said, 'No, I

don't understand.').  But where plaintiff himself acknowledges having received multiple

warnings, and where those warnings were entirely clear even under plaintiff's recollection of

them, he does not remotely call into question the existence of probable cause for the arrest.  *Cf.*

*Oberwetter*, 639 F.3d at 555 ("Oberwetter admits in her complaint that before she was arrested

she twice refused [the officer]'s order to stop dancing and leave the Memorial.").

**C.      The Fact that Plaintiff's Jacket Conveyed a Message Only Reinforces
the Conclusion that There Was Probable Cause for the Arrest.**

Plaintiff's final argument is that there was no probable cause because his jacket

constituted "pure speech" protected under the First Amendment.  Of course, plaintiff's assertion

that the jacket constitutes speech is an implicit acknowledgement that it was "designed or

adapted to bring into public notice a party, organization or movement" within the meaning of

section 6135.  At a minimum, plaintiff's argument on this point actually goes much of the way

toward conceding the existence of probable cause.

But even in the absence of this concession, the fact that the jacket conveyed a message

does not provide any support for plaintiff's claim here.  First, it is important to emphasize that

the FTCA does not provide a cause of action for a violation of one's constitutional rights. *See*

*FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994). Thus, plaintiff cannot rely directly upon an

alleged First Amendment violation in support of his FTCA claim, which is all that is set forth in

the Complaint. Rather, the relevant question here, as noted above, is whether there was probable

cause for the arrest or the arresting officers reasonably believed that there was probable cause.

Furthermore, "policemen are not charged with predicting the future course of constitutional law,"

and therefore are entitled to enforce a statute unless "settled, indisputable law" establishes that

doing so would be unconstitutional. *See Dellums v. Powell*, 566 F.2d 167, 176 (D.C. Cir. 1977),

citing *Pierson v. Ray*, 386 U.S. 547, 557 (1967), and *Wood v. Strickland*, 420 U.S. 308, 321

(1975).

Here, the arresting officers would have had no reason for concern that a court might find

the enforcement of the unlawful entry statute or section 6135 to violate the plaintiff's First

Amendment rights. The District of Columbia courts have repeatedly found that the Supreme

Court, with the exception of the sidewalks near the street on the perimeter of the Court grounds,

as outlined in *United States v. Grace*, 461 U.S. 171 (1983), is a nonpublic forum for First

Amendment purposes. *See Lawler v. United States*, 10 A.3d 122, 124 (D.C. 2010); *Potts v.*

*United States*, 919 A.2d 1127, 1129 (D.C. 2007); *Bonowitz v. United States*, 741 A.2d 18, 22

(D.C. 1999). In a nonpublic forum, a restriction on speech such as the Display Clause of section

6135 (which, as noted above, also constituted the "additional specific factor" supporting

enforcement of the unlawful entry statute) will be upheld so long as it is "reasonable and not an

effort to suppress expression merely because public officials oppose the speaker's view." *See*

*Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 802 (1985). And the District

of Columbia Court of Appeals has found that the Display Clause satisfies this standard, rejecting

First Amendment challenges to arrests on at least five occasions.  *See Lawler*, 10 A.3d at 124; *Potts*, 919 A.2d at 1129; *Bonowitz*, 741 A.2d at 22; *see also Pearson v. United States*, 581 A.2d 347, 354 (D.C. 1990); (rejecting First Amendment challenge regardless of whether plaza was public or nonpublic forum); *United States v. Wall*, 521 A.2d 1140, 1142 (D.C. 1987) (same).

As a result, the arresting officers would have had no conceivable reason to suspect that a court might find enforcement of the Display Clause, or an arrest under the unlawful entry statute premised upon enforcement of the Display Clause, to be a violation of anyone's First Amendment rights.  *See Oberwetter*, 659 F.3d at 555.  The fact that plaintiff's jacket constituted a form of speech therefore does not undermine the conclusion that the officers had probable cause to arrest him.  *Id*.

And while this Court need not conduct its own independent evaluation of the question of whether section 6135 violate the First Amendment, it is also clear that it does not.  First, the interior of the Supreme Court building where plaintiff was arrested is plainly a nonpublic forum. The three types of forums under the Supreme Court's First Amendment analysis are public forums, designated public forums, and nonpublic forums.  A "public forum" is a property that has "immemorially been held in trust for the use of the public and, time out of mind, [has] been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  *See Perry Education Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983). It is a property that has as "a principal purpose … the free exchange of ideas."  *International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 679 (1992).  A "designated public forum" is space that the government has specifically designated for assembly and speech either for the public at large, or limited to certain speakers or certain subjects.  *See Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 800 (1985).  A property that is neither a public

forum nor a designated public forum is either a "nonpublic forum" or not a forum at all.  *See*

*Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998).

As explained in the attached affidavit of Timothy Dolan, it is the policy of the Supreme

Court not to allow demonstrations or other types of expressive activity that violate the statute

inside the Supreme Court building.  *See* Att. A, at ¶ 4.  In order to determine whether conduct

violates section 6135, the Court Police look to the language of the statute, utilizing the narrowing

construction of the Assemblages Clause that has been adopted by the District of Columbia

courts.  *Id.*  The Court is particularly careful to enforce the statute strictly inside the Court

building itself.  *Id.*  In these circumstances, the interior of the Court building is certainly a

nonpublic forum.

Nor should there be any doubt that the statute is both reasonable and content-neutral.

On the first point, the District of Columbia courts have recognized repeatedly that the Display

Clause is a reasonable measure "to permit the unimpeded access and egress of litigants and

visitors to the Court, and to preserve the appearance of the Court as a body not swayed by

external influence."  *See United States v. Wall*, 521 A.2d 1140, 1144 (D.C. 1987); *see also Cox*

*v. Louisiana*, 379 U.S. 559, 562 (1965) (government "has a legitimate interest in protecting its

judicial system from the pressures which picketing near a courthouse might create").  And the

District of Columbia courts have also had no difficulty in finding both the text of the Display

Clause and its uniform enforcement to be viewpoint-neutral.  *See Potts*, 919 A.2d at 1129-30; *see*

*also Lawler*, 10 A.3d at 126 ("The evidence established that these appellants and their

codefendants were the only person arrested because they were the only ones violating section

6135"); *United States v. Grace*, 461 U.S. 171, 176 (1983) ("We also accept the Government's

contention, not contested by appellees, that almost any sign or leaflet carrying a communication,

including Grace's picket sign and Zywicki's leaflets, would be 'designed or adapted to bring into

public notice a party, organization or movement.').  Mr. Dolan's declaration is to the same effect,

since he states that the Supreme Court Police do not allow demonstrations or other types of

expressive activity that violate the statute inside the Supreme Court building.  *See* Att. A, at ¶ 4.

In these circumstances, it is clear that the statute is both reasonable and viewpoint-neutral, and

any First Amendment challenge to this arrest would be meritless.

## <u>CONCLUSION</u>

For the reasons set forth above, plaintiff fails to state a claim upon which relief can be

granted, and the complaint in this case should be dismissed in its entirety.  In the alternative,

summary judgment should be entered in favor of the United States because there is no genuine

dispute of material fact and the government is entitled to judgment as a matter of law.

Respectfully submitted,

RONALD C. MACHEN JR,
D.C. Bar No. 498610
United States Attorney

DANIEL F. VAN HORN
D.C. Bar No. 924092
Chief, Civil Division

 /s/  *Jane M. Lyons*
JANE M. LYONS
D.C. Bar No. 451737
Assistant United States Attorney
555 Fourth Street, N.W. – Room E4816
Washington, D.C. 20530
(202) 514-7161

Of Counsel:
SCOTT S. HARRIS
Counsel
Supreme Court of the United States
1 First Street, N.E.
Washington, D.C. 20543