UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| FITZGERALD SCOTT | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 12-1696 (ABJ) |
| UNITED STATES | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

On October 17, 2012, plaintiff Fitzgerald Scott filed this lawsuit against the United States alleging that the United States Supreme Court Police violated clearly established First Amendment principles when they arrested him for unlawful entry while he was wearing a jacket bearing the message "Occupy Everywhere" in the Supreme Court building. Compl. [Dkt. # 1] ¶¶ 8, 13, 17–18. The complaint consists of one count under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), alleging false arrest and imprisonment, and it seeks compensatory damages and the expungement of all records of Scott's arrest. *Id.* ¶¶ 23–25, Prayer for Relief.

The United States has moved to dismiss the case or, in the alternative, for summary judgment under Federal Rules of Civil Procedure 12(b)(6) and 56. Def.'s Mot. to Dismiss or, in the alternative, for Summ. J. ("Def.'s Mot.") [Dkt. # 6]. Scott opposes defendant's motion and has filed a cross-motion for summary judgment. Pl.'s Cross-Mot. for Summ. J. [Dkt. # 10]. Because Scott's arrest was supported by probable cause or, at a minimum, a reasonable good

faith belief on the part of the arresting officers that they had probable cause, the Court will grant defendant's motion for summary judgment and deny Scott's cross-motion.

## BACKGROUND

The following facts are undisputed except where noted.  On January 20, 2012, Scott entered the interior of the Supreme Court wearing a jacket that had the words "Occupy Everything" or "Occupy Everywhere" painted on it.  Pl.'s Statement of Issues as to which there is a Genuine Dispute ("Pl.'s Statement"), Ex. 2 to Pl.'s Mem. in Opp. to Def.'s Mot. [Dkt. # 8-2] ¶ 1; Def.'s Resp. to Pl.'s Statement of Undisputed Facts ("Def.'s Resp."), Ex. 1 to Def.'s Reply in Supp. of Def.'s Mot. and Opp. to Pl.'s Cross-Mot. [Dkt. # 14-1] ¶ 1.  According to Timothy Dolan, Deputy Chief of the Supreme Court of the United States Police ("Supreme Court Police"), there had been a significant protest outside of the Court that day organized by the "Occupy" movement.  Dolan Decl., Ex. 2 to Def.'s Mot. [Dkt. # 6-2] ¶ 5.  While Scott was inside the building looking at exhibits on display, Deputy Chief Dolan approached him and told him that he could not wear the jacket while in the building, but that he could do so on the public sidewalk outside.  Pl.'s Statement ¶¶ 2–3; Def.'s Resp. ¶ 4.

In the course of their interaction, Deputy Chief Dolan – who was wearing his uniform – identified himself as the authority at the Supreme Court.  Compl. ¶ 15; Dolan Decl. ¶ 6.  He also informed Scott that his jacket was comparable to a sign or demonstration, and that Scott would be arrested if he did not either remove the jacket or leave the building.  Pl.'s Statement ¶ 4; Def.'s Resp. ¶¶ 2, 4.  When Scott did neither, Deputy Chief Dolan instructed another officer to place Scott under arrest for unlawful entry.  Pl.'s Statement ¶ 5; Dolan Decl. ¶ 6.[1]  Scott was

---

[1]   Plaintiff has also provided the Court with a video recording of these events, which corroborates this account.  *See* Ex. A to Pl.'s Cross-Mot. [Dkt. # 10-4].

released from custody the same day, and the charges against him were ultimately dropped. Compl. ¶ 20; Dolan Decl. ¶ 6.

Scott filed an administrative tort claim with the Supreme Court that was denied on September 20, 2012. Compl. ¶ 22. On October 17, 2012, he filed this suit under the FTCA asserting that the "United States is liable for the false arrest and imprisonment of Mr. Scott because Pfc. Freeman arrested Mr. Scott without probable cause." Compl. ¶ 23. The defendant has moved to dismiss or, in the alternative, for summary judgment under Rules 12(b)(6) and 56 on the grounds that the Supreme Court Police had probable cause to arrest Scott for violating D.C.'s unlawful entry statute, D.C. Code § 22-3302(b), as well as the federal statute banning the display within the Supreme Court building of items designed to bring notice to organizations or movements. 40 U.S.C. § 6135 (2012). Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem.") [Dkt. # 6] at 7. Scott opposes the motion, and he has filed a cross-motion for summary judgment, asserting that his actions were protected by the First Amendment under *Cohen v. California*, 403 U.S. 15 (1971), and that therefore, his arrest was illegal. Pl.'s Mem. in Opp. to Def.'s Mot. and in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem.") [Dkt. # 10-1] at 6–7.

**STANDARD OF REVIEW**

I. **Motion to Dismiss**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*., quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

**II. Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (citations omitted). All underlying facts and inferences must be analyzed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255 (citations omitted). "The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).[2]

---

2   A motion to dismiss must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d); *see also Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (holding that the district court's consideration of matters outside the pleadings converted the defendant's Rule 12 motion into one for summary judgment). Because both parties have submitted matters outside of the pleadings, and the Court will consider them in the resolution of at least some issues presented by this motion, the Court will treat the United States' motion as one for summary judgment.

## ANALYSIS

The FTCA enables individuals to bring claims against the United States government for injuries caused by government employees acting within the scope of their employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act . . . occurred." 28 U.S.C. § 1346(b)(1). It is undisputed that the Supreme Court Police officers were acting within the scope of their employment when they arrested Scott. *See* Compl. ¶ 2. So, the United States could be held liable if the officers committed the torts of false arrest and imprisonment under District of Columbia law when they arrested Scott.[3]

In the District of Columbia, "[f]alse arrest is indistinguishable as a practical matter from the common law tort of false imprisonment." *Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010) (internal quotation marks and citations omitted). "[T]he essential elements of false imprisonment are: (1) the detention or restraint of one against his or her will, and (2) the unlawfulness of the detention or restraint." *Id.*, quoting 32 Am. Jur. 2d *False Imprisonment* § 7 (2007). Scott's arrest meets the first element because he was detained against his will. *See* Compl. ¶ 18. Therefore, the only question before the Court is whether his detention was unlawful.

District of Columbia courts recognize two means to advance an affirmative defense to a false arrest claim: (1) the probable cause test; and (2) the "partially subjective test." *Scales v. District of Columbia*, 973 A.2d 722, 729 (D.C. 2009), citing *District of Columbia v. Murphy*, 635 A.2d 929, 932 (D.C. 1993); *see also* 28 U.S.C. § 2674 (2012) (stating that the United States is

---

3   District of Columbia law on false arrest and imprisonment applies to this case since the arrest occurred here. 28 U.S.C. § 1346(b)(1).

entitled to assert any defense that would otherwise be available to the employee whose act gave rise to the claim).

Under the probable cause test, "if a police officer has so-called constitutional probable cause to arrest, determined by reference to the objective standard used to determine probable cause in a criminal proceeding, the arrest will be lawful, and the officer accordingly will have a complete defense to a false arrest claim." *Murphy*, 635 A.2d at 931–32 (citation omitted). "The probable cause test is based entirely on the objective facts and in this context.  The court does not consider 'what a police officer may have actually, even reasonably, perceived the facts to be.'" *Scales*, 973 A.2d at 729; *see also Munn v. United States*, 283 A.2d 28, 30 (D.C. 1971) (finding that probable cause is an objective standard that turns on whether a reasonable officer, in light of his experience and training, could believe a crime was being committed).

The partially subjective test is less stringent than the probable cause test. *See Scales*, 973 A.2d at 729 (describing the partially subjective test as "usually easier-to-meet").[4]  To meet this test, the officer must show:  (1) that he believed in good faith that his conduct was lawful; and (2) that his belief was reasonable. *Id.*  Under this approach, the Court need not find that the arrest was actually supported by probable cause; the officer could be wrong as long as he was acting reasonably and in good faith. *Id.*

The Court finds that Scott's arrest was supported by probable cause, but even if it was not, it was justified under the partially subjective test; therefore, the United States is not liable for false arrest and imprisonment.

---

4   Courts will apply the partially subjective test only where, as here, the defendant has affirmatively argued that the arresting officer had a reasonable good faith belief that there was probable cause for the arrest. *Scales*, 973 A.2d at 729; *see also* Def.'s Mem. at 7.

I. **The Supreme Court Police had probable cause – or a reasonable good faith belief that there was probable cause – to arrest Scott.**

The District of Columbia's unlawful entry statute is somewhat broader than its name would suggest, and it covers more than merely entering onto certain premises without authorization. The statute also makes it illegal for any person without authority to *remain* on property against the will of the person lawfully in charge of it.[5] D.C. Code § 22-3302(b). The courts have interpreted this statute to require "some additional specific factor establishing the party's lack of a legal right to remain." *Wheelock v. United States*, 552 A.2d 503, 505 (D.C. 1988), quoting *O'Brien v. United States*, 444 A.2d 946, 948 (D.C. 1982). Here, Scott remained after the Supreme Court Police directed him to leave, and the United States argues that the "additional specific factor" which authorized his arrest for unlawful entry was his violation of 40 U.S.C. § 6135. Def.'s Mot. at 7.

Under section 6135 "[i]t is unlawful to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, or to display in the Building and grounds a flag, banner, or device designed or adapted to bring into public notice a party,

---

5    Under 40 U.S.C. §§ 6121(a)(1) and (3), it is the Supreme Court Police that is authorized to protect the Supreme Court Building, and to make arrests for violations of federal or state law in connection with that duty. In his complaint, Scott suggests that his arrest was improper because the officer who directed him to either remove his jacket or leave to avoid arrest was a member of the U.S. Capitol Police, who was not lawfully in charge of the property. Compl. ¶¶ 11–17. But Deputy Chief Dolan has averred that he was the one who provided the warnings to Scott, and that no U.S. Capitol police officers were on the scene or involved in the arrest. Dolan Decl. ¶¶ 6–7. The videotape submitted to the Court as an exhibit by Scott does not provide any clear indication that any of the officers on the scene were members of the U.S. Capitol Police. *See* Ex. A to Pl.'s Cross-Mot. [Dkt. # 10-4]. Indeed, it shows Deputy Chief Dolan giving orders to the other officers, which would suggest that the officers were in fact Dolan's Supreme Court Police subordinates. *Id.* Most important, Scott's own statement of facts as to which there is no genuine dispute attributes the actions that prompted this lawsuit to Dolan; it states that it was Deputy Chief Dolan who issued the warnings that are challenged in this case. Dkt. # 10-3 ¶ 4. So it appears that Scott has abandoned this contention.

organization, or movement." 40 U.S.C. § 6135. The first part of the statute is known as the "assemblages clause," and the second part is the "display clause."

The Supreme Court Police had probable cause to arrest Scott for violating section 6135 because Scott's actions fell squarely within the plain language of the display clause: he was displaying a device (his jacket) in the building which had been adapted to bring public attention to the "Occupy" movement. *See Kinane v. United States*, 12 A.3d 23, 25–26 (D.C. 2011) (affirming the conviction of protestors for violating the display clause of section 6135 where the protestors entered the Court with shirts that read, "Shut Down Guantanamo"); *Potts v. United States*, 919 A.2d 1127, 1130 (D.C. 2007) (holding that an article of clothing can be a "device" within the meaning of section 6135). Since Scott was violating the display clause, he had no authority to remain in the Supreme Court building after the Supreme Court Police told him to cover the display or leave. Therefore, Scott's violation of section 6135 provided the "additional specific factor" that the Supreme Court Police needed to establish probable cause to arrest him for unlawful entry.

Moreover, even if the Supreme Court Police officers did not have probable cause to arrest Scott for unlawful entry, they are still not liable for false arrest because they meet the "partially subjective test." In his affidavit, Deputy Chief Dolan averred that he determined Scott's jacket violated the display clause of section 6135. Dolan Decl. ¶ 6. This determination was reasonable because, as previously mentioned, Scott's actions could reasonably be viewed to fall squarely within the display clause. Deputy Chief Dolan gave Scott a choice: he informed him that he had to remove the jacket or leave the building, and that he would be arrested if he continued to wear the jacket in the building. Dolan Decl. ¶ 6. When Scott did not leave the building or remove his

jacket,[6] Deputy Chief Dolan's subjective belief that Scott was in violation of the unlawful entry statute was reasonable since Dolan was in a position of authority at the time and Scott's violation of section 6135 provided the additional specific factor needed for a violation of the unlawful entry statute.[7]

## II. Settled constitutional law does not alter the Court's analysis.

Scott contends that his arrest was not reasonable under the objective probable cause test or the partially subjective test because it violated well-settled First Amendment law. *See* Pl.'s Mem. at 1, 9–10. Specifically, Scott argues that at the time of his arrest, the Supreme Court's decision in *Cohen v. California*, 403 U.S. 15 (1971) and its progeny had clearly established that his actions were protected by the First Amendment. Pl.'s Mem. at 3–4. Therefore, according to Scott, a reasonable police officer faced with Scott's actions could not have thought it was lawful to arrest him. *See* Pl.'s Reply in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Reply") [Dkt. # 15] at 1. This argument fails.

---

6   Scott alleges that he did not "refuse" to leave or take off his jacket, but that he was arrested as he was asking questions because he did not understand the officers' orders. Pl.'s Statement ¶ 5. D.C. Code § 22-3302 makes it unlawful for an individual to be in a building "without lawful authority to remain therein." Here, Scott did not have lawful authority to remain in the building clearly after the Supreme Court Police asked him to leave because he was advertising a "movement" in violation of section 6135. The fact that he "did not leave the building or remove his jacket" after he was ordered to do so by Supreme Court Police, Pl.'s Reply at 1, constituted a violation of the unlawful entry statute.

7   Relying on *Shifrin v. Wilson*, 412 F. Supp. 1282, 1295 (D.D.C. 1976), Scott argues that defenses involving good faith are typically not appropriate in "civil rights case[s]" at the summary judgment stage. Pl.'s Mem. at 10. In *Shifrin*, the court noted that good faith is "*almost* always" a question for the jury. 412 F. Supp at 1295 (emphasis added). But under the summary judgment standard, where a party has presented evidence of good faith such that no reasonable fact-finder could find otherwise, then there is no genuine dispute on that issue, and the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248. Since the United States has met this standard, it is entitled to summary judgment under the partially subjective test.

An arresting police officer may not justify an arrest by "ignorance or disregard of settled, indisputable law." *Dellums v. Powell,* 566 F.2d 167, 176 (D.C. Cir. 1977), quoting *Wood v. Strickland*, 420 U.S. 308, 321 (1975). But officers are not "charged with predicting the future course of constitutional law." *Id.*, quoting *Pierson v. Ray*, 386 U.S. 547, 557 (1967). The proper inquiry, therefore, is not whether a court could ultimately find that the application of the display clause in this instance violated Scott's First Amendment rights, but whether the officers knowingly ignored settled, indisputable law when they made the determination on the scene to effect the arrest.

Scott argues that his arrest violated well-settled constitutional law as set forth in *Cohen*. In *Cohen*, the plaintiff was convicted of violating a California statute that prohibited "maliciously and willfully disturb[ing] the peace or quiet of any neighborhood or person . . . by . . . offensive conduct," for wearing a jacket bearing the words "Fuck the Draft" in a corridor of the Los Angeles courthouse. 403 U.S. at 16. The Supreme Court overturned the conviction because: (1) the statute could not be justified on the grounds that it sought to preserve appropriate decorum in the courthouse since it applied everywhere throughout the state, and it did not explain what kind of speech was "offensive"; (2) Cohen's message did not involve obscene or fighting words; (3) those who were offended by the jacket could avert their eyes; (4) the message was not inherently likely to cause a violent reaction; and (5) "the State may not, consistently with the First and Fourteenth Amendments, make the simple public display here involved of this single four-letter expletive a criminal offense." *Id.* at 20–23; 26.

Scott asserts that *Cohen* applies to his case because it involves "strikingly similar facts," and the sole difference "of even arguable constitutional significance" between his case and *Cohen* is that "the statute involved in *Cohen* was not limited to the courthouse grounds or

building, as is 40 U.S.C. § 6135." Pl.'s Mem. at 3. But the difference between the two statutes is significant. Cohen involved a broad statute proscribing malicious and disruptive conduct, and what offended the Court was the officers' unguided conclusion – based on the content of Cohen's speech alone – that his act of pure expression violated the statute. But the statute here is specifically directed to particular types of displays in a very particular place, and it applies regardless of the content of the display. Therefore, the appropriate analysis in this case is whether well-established law indicated at the time that an arrest for unlawful entry based on a violation of section 6135 was unconstitutional.

At the time of Scott's arrest, the application of section 6135 – and its predecessor 40 U.S.C. § 13k[8] – to individuals in the Supreme Court building and plaza had been upheld as constitutional. *See Kinane v. United States*, 12 A.3d 23, 25–26 (D.C. 2011) (affirming the conviction of protestors for violating the display clause of section 6135 when the protestors entered the Court with shirts that read, "Shut Down Guantanamo"); *Potts v. United States*, 919 A.2d 1127, 1129–31 (D.C. 2007) (holding that "40 U.S.C. § 6135 does not violate the First Amendment, either on its face or as applied to appellants" who were arrested for wearing orange jumpsuits with black hoods and holding a sign that read "no taxes for war or torture" on the plaza in front of the Supreme Court);[9] *cf United States v. Grace,* 461 U.S. 171, 178–79, 183 (1983) (finding section 13k to be unconstitutional as applied to the public sidewalks around the Court

---

8   The wording of section 13k is substantially similar to that of section 6135. *Lawler v. United States*, 10 A.3d 122, 127 (D.C. 2010) ("[W]e have examined the statute both before and after the 2002 amendment and found no significance in the altered language.").

9   The *Potts* court also held that the display clause is not unconstitutionally vague or overbroad. 919 A.2d at 1130 & nn.1&2.

but leaving the statute intact with respect to the Supreme Court plaza and building).[10] The fact that long after *Cohen*, this statute had been upheld as constitutional on its face and as applied to individuals in similar situations defeats Scott's assertion that his arrest violated clear constitutional law.

To avoid this conclusion, Scott attempts to distinguish his case from *Potts* and *Kinane*. Pl.'s Reply at 4–5. He notes that *Kinane* involved a facial challenge to the display clause, which was raised for the first time on appeal and was therefore subject to plain error review. Pl.'s Reply at 4–5. He notes that, unlike the plaintiff in *Kinane*, he is not raising a facial challenge to any statute, and his case is thus not subject to the strict standard of plain error review. Pl.'s Reply at 5. But the kind of review applied in *Kinane* is not relevant. What matters is that the *Kinane* court upheld the application of section 6135 to individuals displaying devices – in particular, clothing – intended to bring public attention to a "movement" while in the Supreme Court building, 12 A.3d at 25–26, and the existence of that case law supports the reasonableness of the officers' belief in the validity of Scott's arrest at the time.

Similarly, Scott argues that defendant's reliance on *Potts* is misplaced because that case involved a "small group protest" rather than "pure speech." Pl.'s Reply at 5. But the arrests in *Potts* were not dependent upon the number of people involved; the protestors were convicted

---

10   On June 11, 2013, a judge on this court held that section 6135 was "plainly unconstitutional on its face as unreasonable and overbroad." *Hodge v. Talkin*, No. 12-00104, 2013 WL 2523794, at *17 & n.24 (D.D.C. June 11, 2013). This opinion does not alter the Court's analysis because at the time of Scott's arrest, section 6135 had been upheld by the D.C. Court of Appeals on numerous occasions, and officers are not "charged with predicting the future course of constitutional law." *Dellums*, 566 F.2d at 176 (citation omitted). Moreover, this case does not squarely present the question of the constitutionality of the clause. This is a civil case challenging the objective grounds for or subjective reasonableness of the arrest from the police officers' point of view; it is not a challenge to a criminal conviction. The only issue to be determined here is whether the officers reasonably believed they were acting within the bounds of the constitution. Whether a regulation that specifically bans certain forms of expression under certain circumstances should pass constitutional muster is a question for another day.

under the display clause because they were wearing orange jumpsuits and black hoods and carrying a sign on Supreme Court grounds. *See Potts*, 919 A.2d at 1129. And in *Kinane*, the court noted that "[w]hile the assemblage clause prohibits expression based on the formation of groups, the display clause prohibits certain types of expression carried out by lone individuals as well as by groups of people." 12 A.3d at 27. In light of the existence of case law upholding section 6135 on its face and as applied to individuals in the Supreme Court building and plaza at the time of Scott's arrest, the Supreme Court Police did not disregard "settled, indisputable law" when they arrested Scott for unlawful entry based on his violation of section 6135.

## CONCLUSION

For the foregoing reasons, this Court will grant the defendant's motion for summary judgment and deny plaintiff's cross-motion. A separate order will issue.

/s/ Amy B. Jackson
_____
AMY BERMAN JACKSON
United States District Judge

DATE: July 2, 2013